IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ANNE-MARIE NAJAF PIR, Trustee,  )
                                )
            Plaintiff,          )   TC-MD 130066N
                                )
    v.                          )
                                )
MARION COUNTY ASSESSOR,         )
                                )
            Defendant.          )   **DECISION**

Plaintiff appeals the real market value of property identified as Account R66127 (subject property) for the 2012-13 tax year. A trial was held in the Oregon Tax Courtroom in Salem, Oregon, on May 8, 2013. Henry Najaf Pir (Pir) appeared and testified on behalf of Plaintiff. Robb Witters (Witters), Senior Residential Appraiser, appeared and testified on behalf of Defendant. Stephanie Hatfield (Hatfield), Residential Appraiser, also testified on behalf of Defendant. Plaintiff's Exhibits 1 and 2 and Defendant's Exhibit A were received without objection.

## I. STATEMENT OF FACTS

The subject property is a 1,715-square foot single family "ranch" style residence located in the "Battlecreek Estates Subdivision in South Salem." (Ptf's Ex 1 at 1-2; Def's Ex A at 1-2.) Witters testified that the subject property is located in a homogenous neighborhood of single family residences. He testified that nearby homes are of a similar quality and design as the subject property and were built around the same time. The subject property residence was built in 1988 and includes three bedrooms, two bathrooms, and a two-car garage. (Ptf's Ex 1 at 1-2; Def's Ex A at 1-2.) Witters described the quality of the "interior materials used in construction of the residence" as "average * * * with a few notable exceptions." (Def's Ex A at 1.) Witters

stated: "The kitchen flooring is slate as is the fireplace surround. One bathroom has what appears to be travertine counter top, flooring, and bathtub wainscot. The homeowner's bedroom has a trayed ceiling and the ceiling in the living room is vaulted." (*Id.*)

The parties disagree on the condition of the subject property. Pir determined the subject property was in "poor" condition as of January 1, 2012, whereas Witters and Hatfield determined the subject property was in "average" condition, with the exception of the "yard improvements," which Hatfield testified were in "fair" condition. (Ptf's Ex 1 at 2; Def's Ex A at 1.)

Pir stated in his report that the subject property "has an original 25 year[] old Shake roof, which not only is in need of constant repairs, but [] has a negative impact on insurance premiums every year. The estimate from the roofing company for the replacement is about $15,000." (Ptf's Ex 1 at 4, *see also* Ptf's Ex 1 at 5-6, 17-18.) Pir stated that the "[e]xterior siding of the subject [p]roperty is low quality vinyl, which has a number of cracks, broken pieces, loose parts and severe warped area[s] due to the heat of summer." (Ptf's Ex 1 at 4.) He testified that the siding cannot be repaired by painting or caulking; it must be replaced. Pir provided a contractor's bid for $12,845 to replace the subject property siding. (*Id.* at 17.) He stated that the subject property "has an eroded deck, broken/dilapidated fence and sunken ground at the north side in an approximated area of 10x30 feet and 8inch deep." (*Id.* at 4, 16.) Pir noted that the subject property does not have gas, only electric, which is "more expensive to heat * * * during [the] wintertime." (*Id.* at 4.) Pir testified that he received a quote to install gas for $2,937. (*See id.* at 8.)

Hatfield testified that she inspected the subject property on July 25, 2012. She testified that she observed that the subject property's interior had been updated with new kitchen cabinets, new slate and vinyl flooring, new light fixtures, and new french doors. Hatfield testified that she

observed ripples and a few holes in the subject property's vinyl siding. She testified that, as reported by Pir, the subject property's roof is old and the fence is leaning. Hatfield testified that she determined the subject property was in "average" condition for a 1988-built home and the "yard improvements" were in "fair" condition. Hatfield testified that the "average" condition of the subject property was based on comparison with properties of a similar age and quality; it was not based on a comparison with all properties in the neighborhood.

Plaintiff purchased the subject property on July 20, 2012. (Ptf's Ex 1 at 2; Def's Ex A at 3.) The subject "property was originally listed April 4, 2012[,] with an asking price of $159,900. The property sold for $145,000." (Def's Ex A at 3.) Witters testified that, according to the regional Multiple Listing Service (MLS), Plaintiff's offer on the subject property was made seven days after the subject property was listed. Witters testified that the sale of the subject property was a short sale. Pir testified that Plaintiff's offer on the subject property was the only offer. He testified that Plaintiff searched for a home to purchase for about one year, during which time Plaintiff looked at 10 to 15 other homes. Pir testified that, at the time of purchase, he thought Plaintiff's purchase price of $145,000 was the real market value of the subject property. He testified that, as of the date of trial, he thought the purchase price might have been too high given all of the repairs required. Pir provided a letter from Chun Truong (Truong), "Broker, Realtor, Coldwell Banker Mtn. West," stating that "[d]uring [that] period of [] sale, [the subject] property had some quality issues and the buyer was aware of that." (Ptf's Ex 1 at 9.) In Truong's opinion, "the price of [the subject] property was well substantiated for $145,000." (*Id.*)

Both Pir and Witters provided comparable sales in support of their requested real market values. Pir testified that he identified six comparable sales located near the subject property and similar in size and year built. (Ptf's Ex 1 at 2-3.) He testified that his first four comparable sales

are located within a few blocks of the subject property; his fifth and sixth sales are each located 2.5 miles from the subject property. (*Id.* at 3.) Pir's sale 1 is a 1,932-square foot, three-bedroom, two-bathroom "ranch" home built in 1978 that sold for $150,000 in July 2012. (*Id.* at 2.) Pir's sale 2 is located "167 feet" from the subject property and sold in 1999. (*Id.*) Pir's sale 3 is a 1,465-square foot, three-bedroom, two-bathroom "ranch" home built in 1980 that sold for $123,100 in August 2011. (*Id.*) Pir reported that sale 3 was "Bank Owned" at the time of sale. (*Id.*) Pir's sale 4 was a 1,630-square foot, two-bedroom, two and one-half bathroom "ranch" home built in 1990 that sold for $170,000 in December 2011. (*Id.*) Pir's sale 4 was also used by Witters as his sale 1. (Def's Ex A at 2.) Pir made no adjustments to his comparable sales.

Witters testified that he did not use Pir's sale 1 because it sold seven months after the January 1, 2012, assessment date. Witters testified that he did not use Pir's sale 3 because it is 250 square feet smaller than the subject property.

Witters identified four comparable sales located within 1.25 miles of the subject property and with sale dates from September to December 2011. (Def's Ex A at 2.) He stated that his sale 2 "was a short sale" and his sale 3 "transferred back to the lender through foreclosure May of 2011. It then transferred to Fannie Mae later that same month." (*Id.* at 3.) Witters considered adjustments for location, site, number of stories, year built and condition, "room count," gross living area, garage, "OSD landscaping," "yard improvements," additional buildings, and "sale type." (*Id.* at 2.) He determined that few adjustments were required, although he made a downward adjustment of $1,000 to each of his comparable sales for "yard improvements." (*Id.*) Witters determined adjusted sale prices ranging from $159,000 to $169,000. (*Id.*) He testified that his sales 1 and 2 are both located within the same subdivision as the subject property, so he placed the most weight on those sales. (*See id.* at 3.) Witters placed the "[m]ost weight" on sale

1, with an adjusted sale price of $168,000, because it sold "within three weeks of the assessment date" and "secondary weight" on sale 2, with an adjusted sale price of $159,000. (*Id.*) He concluded that his comparable sales "support the current market value of $164,640 as found by the Board of Property Tax Appeals" (BOPTA). (*Id.*)

Witters testified that he also searched the Willamette Valley MLS using the following parameters: "Sold residences, within 1.5 miles of the subject property, from 1,600 square feet to 1,830 square feet in living area, built from 1975 to 1999, and with closing dates between July 1, 2011[,] and January 31, 2012." (Def's Ex A at 5.) His searched yielded seven sales, including the four sales that he used in his sales comparison approach. (*Id.*) The unadjusted prices of those sales ranged from $160,000 to $210,000. (*Id.*)

The 2012-13 tax roll real market value of the subject property was $173,210. (Ptf's Compl at 4.) BOPTA reduced the 2012-13 real market value to $164,640. (*Id.*) The 2012-13 maximum assessed value of the subject property was $196,360. (*Id.*) Plaintiff requests that the 2012-13 real market value be reduced to $145,000, based on Plaintiff's July 2012 purchase price. Defendant requests that the BOPTA real market value of $164,640 be sustained.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2012-13 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at \*2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed

seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[1] The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). There are three approaches of valuation that must be considered, although all three approaches may not be applicable: the cost approach, the sales comparison approach, and the income approach. OAR 150-308.205-(A)(2)(a); *Allen v. Dept of Rev.* (*Allen*), 17 OTR 248, 252 (2003). The real market value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted).

Plaintiff has the burden of proof and must establish her case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). If the evidence is inconclusive or unpersuasive, Plaintiff will have failed to meet her burden of proof. *See Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Sale of the subject property in July 2012*

Plaintiff relies primarily on her July 2012 purchase of the subject property for $145,000. "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very

---

[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2011.

persuasive of the market value." *Kem v. Dept. of Rev.* (*Kem*)*,* 267 Or 111, 114, 514 P2d 1335 (1973) (citations omitted). "In the absence of data indicating that 'the price paid was out of line with other market data material, we believe [a recent sale] to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Bros. Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994) (citations omitted).

Under *Kem*, a sale of the subject property must be "recent." *Kem*, 267 Or at 114. "Whether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment." *Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974). The subject property was initially listed for $159,900 in April 2012, four months after the January 1, 2012, assessment date and sold for $145,000 in July 2012, seven months after the January 1, 2012, assessment date. The sale of the subject property in July 2012 may be considered recent as of January 1, 2012, if the market conditions as of July 2012 were similar to those as of January 1, 2012. The court received no evidence of whether market conditions as of July 2012 were similar to market conditions as of January 1, 2012. Additionally, the subject property sale was a short sale suggesting that the sale may not have been a "voluntary, arm's-length transaction." The subject property was listed in April 2012, and Plaintiff made an offer seven days after it was listed. Plaintiff has not established by a preponderance of the evidence that her July 2012 purchase price of $145,000 was the subject property's real market value as of January 1, 2012.

/ / /

/ / /

B.     *Sales comparison approach*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citations omitted).  The "court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson v. Clackamas County Assessor,* TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003).  OAR 150-308.205-(A)(2)(c) states:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions.  When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the non typical market condition."

Pir presented evidence of six sales, but made no adjustments to any of his sales.  Under OAR 150-308.205-(A)(2)(c), adjustments must be made for differences including location, size, age, quality, condition, and market conditions.  The court cannot place any weight on Pir's comparable sales because he failed to make adjustments for differences between his comparable sales and the subject property.  For instance, Pir's sale 1 occurred seventh months after the assessment date and Pir did not make an adjustment for time or explain why no time adjustment was required.  Pir's sale 3 is 250 square feet smaller than the subject property, but Pir did not make an adjustment for size.[2]  Several of Pir's sales are not comparable to the subject property as of January 1, 2012.  For instance, Pir's sale 2 in August 1999 is too far removed from the

---

[2] Witters testified that he did not consider Pir's sale 3 because it is 250 square feet smaller than the subject property.  However, Witters' sale 3 is nearly 500 square feet smaller than the subject property and Witters made an upward adjustment of $20 per square foot for the gross living area of his sale 3.  Pir's sale 3 could be similarly adjusted upward by $20 per square foot.

January 1, 2012, assessment date to provide relevant evidence of the subject property real market value. Pir's sales 5 and 6 were not located near the subject property.

Plaintiff has failed to prove by a preponderance of the evidence that the real market value of the subject property was $145,000 as of January 1, 2012. Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Witters presented four comparable sales supporting the 2012-13 real market value of $164,640, determined by BOPTA. Pir took issue with Witters' sale comparison approach because Witters determined that the subject property was in "average" condition, whereas Pir determined the subject property was in "poor" condition, suggesting the subject property value should be adjusted downward. In support of his determination that the subject property was in "poor" condition, Pir provided photographs of the subject property and contractors' bids for repairs. Witters and Hatfield also provided photographs of the subject property in support of their determination that the subject property was in "average" condition for a property of its age and quality. Neither party presented any evidence from which the court can determine what constitutes "average" or "poor" condition for a 1988-built ranch home of average quality. The court reviewed the photographs submitted of the subject property as well as the comparable sales identified by each party and it does not appear that the condition of subject property, with the exception of the "yard improvements," is noticeably inferior to the conditions of the comparable sales selected. The court concludes that no further adjustment for "condition" is supported.

/ / /

/ / /

Plaintiff has failed to prove by a preponderance of the evidence that the real market value of the subject property was $145,000 as of January 1, 2012. No further change to the 2012-13 real market value of the subject property is supported.

### III. CONCLUSION

After careful consideration, the court finds that Plaintiff has failed to prove by a preponderance of the evidence that the real market value of the subject property was $145,000 as of January 1, 2012. The court further finds that the evidence does not support a change to the 2012-13 real market value of the subject property determined by BOPTA. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of July 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on July 1, 2013. The Court filed and entered this Decision on July 1, 2013.*